In re Douglas F. O'BRYAN, Jr., Debtor.

Jack T. IRWIN, et al., Plaintiffs,

v.

Douglas F. O'BRYAN, Jr., Defendant.

Bankruptcy No. 92–30535.
Adv. No. 93–3007.

United States Bankruptcy Court,
E.D. Kentucky,
Frankfort Division.

Dec. 28, 1995.

**292**

Terry Holloway, Louisville, Kentucky, for plaintiffs.

Bruce Brightwell, Louisville, Kentucky, for defendant.

### *MEMORANDUM OPINION*

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter is before the Court on the plaintiffs' Motion for Summary Judgment, filed herein on November 17, 1995, on the issue of the dischargeability of defendant's debt to the plaintiffs. This matter has been briefed extensively by both the plaintiffs and the defendant. The parties have also filed a Joint Stipulation of Facts for consideration by the Court. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b);

it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

The Joint Stipulation of Facts sets out the following facts which are pertinent to the resolution of this matter:

1. Prior to September, 1989, O'Bryan owned five pieces of construction equipment:

(a) 1978 Komatsu D–57S Trackloader, Serial No. 6897;

(b) 1978 Komatsu D–57 Trackloader, Serial No. 7930;

(c) 1985 Fiat FD–7 Dozer, Serial No. 250675;

(d) 1985 Fiat FG–75 Motor Grader, Serial No. 43S00135; and

(e) 1987 Fiat FE–28 Track Hoe, Serial No. 101H. (hereinafter "Equipment".)

5. O'Bryan told Irwin that he needed some money to move the Equipment, Irwin gave him the money, and he moved the Equipment.

8. Credit Alliance is the heavy equipment finance company that O'Bryan dealt with, out of Atlanta.

9. O'Bryan owed Credit Alliance for the Equipment.

10. Irwin had an interest in Irwin Trucking, Inc. ("Irwin Trucking").

11. Irwin Trucking paid Credit Alliance $5,500.00 on March 8, 1990, with Check No.; (sic) 1848 marked as "payment on account."

12. Irwin Trucking paid Credit Alliance $25,424.01 on January 9, 1990 with Check No. 1773.

13. Irwin Trucking paid Credit Alliance this money so they would return the Equipment, which they had repossessed.

14. There was no written lease agreement between Irwin and O'Bryan.

16. On July 23, 1991, an action was filed by the Plaintiffs, Jack T. Irwin and Jeri P. Irwin (his wife) d/b/a J & J Farms, Irwin Trucking, Inc. and Construction Tractors of Louisville, Inc. (hereinafter referred to collectively as "Plaintiffs"), against O'Bryan for an alleged breach of an alleged oral agreement to sell the Plaintiffs and (sic) five (5) pieces of Equipment.

17. The Plaintiffs' Complaint sought injunctive relief to prohibit the Defendant from selling, conveying, assigning, transferring, using, hiding, damaging, destroying, or moving outside Kentucky all but one of the five pieces of Equipment.

18. Simultaneous with the filing of the Plaintiffs' Verified Complaint and Request for Equitable Relief, the Plaintiffs temporarily obtained an *ex-parte* Restraining Order.

19. Upon O'Bryan's Motion, the Restraining Order was dissolved when the Jefferson County Commissioner, after hearing the evidence, found that there was no evidence to support it.

20. The Commissioner issued a report which found, that O'Bryan was the sole owner of the Equipment.

21. The Plaintiffs' Exceptions to the Commissioner's Report were summarily denied by the Jefferson Circuit Court in its Order of November 20, 1991.

22. On December 16, 1991, Plaintiffs filed a Motion requesting leave to file an "Amended Verified Complaint and Request for Equipment Relief".

23. The Amended Complaint sought, *inter alia*, a Writ of Possession ordering the Defendant to return the Equipment to Plaintiffs' possession.

24. The Plaintiffs never pursued their request for a Writ of Possession.

25. In July of 1992, O'Bryan sold the D-57S Trackloader for $25,000.00.

26. In August of 1992, O'Bryan sold the FS-75 Motor Grader for $20,000.00

27. In October of 1992, O'Bryan sold the FD-7 Dozer for $15,000.00.

28. At the trial of this matter, the judge allowed the jury to hear evidence that O'Bryan sold the Equipment.

29. At the trial of this matter, the judge did not allow the jury to hear evidence that O'Bryan sold the Equipment in reliance upon the Commissioner's finding that he was the owner of the Equipment.

30. On November 18, 1992, the Jefferson Circuit Court entered a judgment which awarded the Plaintiffs the value of the equipment in the sum of $128,417.21, $221,950.00 for loss of use of the equipment, and $300,000.00 in punitive damages.

31. The Defendant filed an appeal to this judgment.

32. On march (sic) 11, 1994, the Kentucky Court of Appeals entered an Opinion reversing the judgment of the Jefferson Circuit Court as to the $128,417.21 and ordering that an amended judgment be entered in the case.

33. The opinion of the Kentucky Court of Appeals never addressed the issue of whether the Trial Court erred in not allowing O'Bryan to introduce the fact that he relied upon the Commissioner's Report in selling the Equipment.

34. That the jury, under Instruction No. 1, Question No. 1, found from the evidence that the Plaintiff, Jack Irwin and the Defendant, Douglas O'Bryan, entered into an oral agreement that the Plaintiff would purchase the five (5) pieces of equipment from the Defendant between September 1, 1989 and June 13, 1990.

35. The jury found under Instruction No. 1, Question No. 2, that Plaintiffs were entitled to recover for the loss of use of their equipment and that the Defendant wrongfully took the equipment from the Plaintiffs.

36. The jury found Instruction No. 1, Question No. 4, that from the evidence it determined that Plaintiffs owned the following items of equipment and that Defendant should return them to Plaintiffs:

a. FE 28 Track Hoe.

b. D 75 S Trackloader (presently in possession of Mr. Irwin).

37. The jury found from the evidence under Instruction No. 1, Question No. 6, that the Defendant acted toward Plaintiffs with fraud, oppression or malice and awarded Plaintiffs the sum of $300,000.00 as punitive damages.

38. That the jury awarded the Plaintiffs the full value for the equipment in the amount of $128,417.21 on Verdict Form A.

39. That the jury awarded the Plaintiffs the amount of $221,950.00 for loss of use of the equipment on Verdict Form B.

40. That the jury awarded Plaintiffs punitive damages in the amount of $300,000.00 on Verdict Form D.

41. That the Trial Court entered a judgment consistent with the jury verdicts on November 18, 1992 awarding the Plaintiffs judgment against Defendant in the collective amount of $650,367.21, under Verdict Forms A, B and D.

42. That the Court of Appeals of Kentucky in Case No. 92–CA–2877–MR sustained the jury verdict and the Trial Court's judgment contained in Verdicts B and D in the collective amount of $521,950.00, but reversed the jury award to the Plaintiffs for the full value of the equipment in the amount of $128,417.21 on Verdict Form A.

43. That the aforementioned Court of Appeals decision of March 11, 1994 has not been appealed and is final.

The Court of Appeals reversed the jury award for the full value of the equipment in the amount of $128,417.21 because the jury had concluded that an oral agreement existed between the parties and that it had been fully performed by both parties. The Court of Appeals went on to say that because there was no proof that the defendant herein committed a breach of contract, he could not be held liable for damages stemming from a breach of contract, regardless of whether he later converted the property.

This matter was initiated in this Court with the filing of the plaintiffs' Complaint to Determine Dischargeability of Debt on April 5, 1993. Plaintiffs alleged therein that the above-referenced judgment was nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (6), both as to the compensatory and the punitive damages. The defendant filed a Motion to Dismiss on May 6, 1993, to which the plaintiffs responded on May 20, 1993. At a hearing on June 22, 1993, the Motion was overruled. The defendant then filed his Answer on June 30, 1993. This Court entered an Order of Abatement on August 6, 1993, in regard to the pending appeal of the judgment in the state court system.

On January 20, 1995, this Court entered an Order requiring counsel for the defendant to file a status report concerning the appellate action. A Status Report was filed on January 30, 1995, notifying the Court that the Kentucky Court of Appeals had handed down its decision. This matter was then set for a pre-trial conference in April and an Order for Trial was entered on April 12, 1995, setting the matter for trial on August 29, 1995. On August 18, 1995, the defendant filed a Motion for Discovery Sanctions, Including Dismissal of Complaint. The Motion was heard on August 28, 1995, at which time the Court rescheduled the trial for September 21, 1995.

The matter came on for trial on September 21, 1995, at which time the Court found that it should be continued to November 3, 1995. On November 1, 1995, the defendant filed a Motion for Continuance, for Oral Argument on Legal Issues, and for Expedited Telephonic Hearing. The Motion was heard on November 2, 1995, at which time the Court sustained the Motion and scheduled oral argument on November 9, 1995. The Court heard oral arguments on that date. The plaintiffs moved for Summary Judgment on November 17, 1995, and on November 21, 1995, an Order was entered submitting the matter for decision.

The plaintiffs contend that they are entitled to summary judgment because the state court judgment has collateral estoppel effect, and the defendant is barred by this doctrine from relitigating the issues of fraud and willful and malicious injury. As stated in FRCP 56(c), a movant is entitled to summary judgment when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In order for the plaintiff to be awarded summary judgment herein, this Court must find that the state court judgment has preclusive, or collateral estoppel, effect in the dischargeability proceeding.

Since this matter involves a dischargeability question which is solely the province of the bankruptcy court, res judicata does not apply. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

Collateral estoppel may be employed in cases involving dischargeability questions, however, if the precise issue was raised in the prior proceeding between the same parties or parties in privity with them, if it was actually litigated, and if its determination was necessary to the outcome in state court. *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981). *See also In the Matter of McMillan*, 579 F.2d 289 (3rd Cir.1978), *In re Mady*, 159 B.R. 487 (Bkrtcy.N.D.Ohio 1993) and *In re Hale*, 155 B.R. 730 (Bkrtcy.S.D.Ohio 1993).

▮ The precise issues to be decided as concerns dischargeability are whether the defendant's conduct brought him within the purview of 11 U.S.C. § 523(a)(2)(A) and (6). Subsection 523(a)(2)(A) provides that an individual debtor's debt incurred

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

will not be discharged in bankruptcy. As stated in *In re McLaren*, 3 F.3d 958 (6th Cir.1993):

> It is well established that in order to except a debt from discharge under section 523(A)(2)
>
>> 'the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss.'
>
> *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 852 (6th Cir.1993) (quoting *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986)). Additionally, the proper burden upon [the creditor] ' "... was to show proof of ... fraud by a preponderance of the evidence only." ' *Id.* at 853 (citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ...).

At page 961. As concerns the reliance requirement, the Supreme Court has recently ruled in *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), that the standard for excepting a debt from discharge as a fraudulent misrepresentation within the meaning of § 523(a)(2)(A) is not reasonable reliance but the less demanding one of justifiable reliance on the representation.

In order for the first requirement for the application of collateral estoppel to be met, it must be clear that the issue of whether the defendant herein incurred the debt to the plaintiffs herein by means of a false representation was raised in the state court proceeding. The record of the state court proceeding, a copy of which has been filed in this matter, shows that the plaintiffs' Complaint raised the issue of misrepresentation, and that they argued in the course of the proceeding that the defendant intended to deceive them and that they reasonably relied on his misrepresentations.

The case was not decided on the basis of common law fraud, however. If it had been, the plaintiffs would have had to prove the elements of common law fraud, including justifiable reliance, as set out in Justice Souter's opinion in *Field v. Mans, supra.* The jury verdicts upon which the judgment is based contain only one reference to fraudulent conduct, and that is in the punitive damages verdict. There is nothing in the record to indicate that the resolution of the issue of reliance of any kind was necessary to the jury's determination, or that it was even considered. Collateral estoppel does not apply, therefore, as concerns § 523(a)(2)(A).

▮ In regard to whether collateral estoppel may be applied to the § 523(a)(6) issue, the same analysis must be performed. The elements contained in that subsection are defined in *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986), wherein the court found:

> Under § 523(a)(6) of the Bankruptcy Code 'willful means deliberate or intentional.' .... 'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm. (Cites omitted.)

Conversion has been found to constitute a willful and malicious injury. In *In re Posta*,

*866 F.2d 364* (10th Cir.1989), the court stated that the "malicious prong" of § 523(a)(6) is satisfied by the debtor's "actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor."

■ Malicious intent may be shown "by evidence that the debtor had knowledge of the creditor's rights, and that, with that knowledge, proceeded to take action in violation of those rights." *See* also *In re Imbody*, 104 B.R. 830 (Bkrtcy.N.D.Ohio 1989), wherein a debtor committed nondischargeable conversion by selling the bank's collateral and intentionally paying the IRS ahead of the bank to satisfy a personal tax obligation. The court opined that the element of maliciousness was satisfied by wrongful acts that lacked justification, even in the absence of personal hatred, spite, or ill-will. The plaintiffs herein raised and argued the issue of the defendant's wrongful taking of the equipment. The jury agreed that he had, and so found. The Kentucky Court of Appeals upheld that verdict.

■ As concerns the issue of whether punitive damages are excepted from discharge, the Court must consider the verdict under which the jury awarded punitive damages. It stated that the jury believed from the evidence that the defendant acted with "fraud, oppression, or malice" toward the plaintiffs, and the plaintiffs should therefore be awarded $300,000.00 in punitive damages. The jury did not specify which of the three elements was determinative. However, in ruling on the defendant/appellant's contention that it was error for the court to instruct the jury that sale of the disputed equipment constituted a conversion of property which would support an award of punitive damages, the Kentucky Court of Appeals stated:

> .... [C]ontrary to appellant's contention, clearly there was sufficient evidence adduced below to support the jury's determination that appellant acted toward appellees with fraud, oppression, or malice in connection with the wrongful conversion.

In *In re Giangrasso*, 145 B.R. 319 (9th Cir. BAP 1992), the court was faced with a situation in which the jury awarded compensatory damages in an action brought on the theories of fraud, conversion and civil conspiracy without identifying which theory was the basis for recovery. In regard to compensatory damages, the court reasoned that the jury had to find the debtor guilty of fraud, conversion or both, and since both are nondischargeable under either § 523(a)(2) or § 523(a)(6), it made no difference which theory prevailed. However, the jury did not specify whether punitive damages were based on fraud, oppression or malice. Since Ninth Circuit courts have held that punitive damages are nondischargeable under § 523(a)(6), but not under § 523(a)(2), the difference was critical in that regard because the facts supported either theory. Because it was unclear which theory was the basis for the award of punitive damages collateral estoppel did not apply.

This Court has held in *In re Winters*, 159 B.R. 789 (Bkrtcy.E.D.Ky.1993), that a debt for punitive damages is nondischargeable under § 523(a)(2), as well as under § 523(a)(6), if all the elements of fraudulent misrepresentation are considered at trial. The within matter was clearly decided on the theory of conversion, but it would not have mattered if it had been decided on a theory of fraud. The punitive damage award would be nondischargeable in either instance.

■ The last question to be considered is the finality of the state court judgment. The plaintiffs filed a motion to finalize the judgment in accordance with the direction of the Kentucky Court of Appeals in its March 11, 1994, decision, and the Jefferson Circuit Court entered its Amended Judgment in that regard on December 11, 1995. The state court judgment is now final, and the plaintiffs should be granted summary judgment in this matter. A summary judgment order that a debtor is collaterally estopped from relitigating a dischargeability issue is a final order for purposes of appeal. *See In re Bathalter*, 123 B.R. 568 (S.D.Ohio 1990), affirmed *National Acceptance Co. of America v. Bathalter*, 951 F.2d 349, 1991 WL 263474 (6th Cir. 1991).

An order in conformity with this opinion will be entered separately.