David **WADE**, Appellant

v.

**POMA GLASS & SPECIALTY WINDOWS, INC.**, doing business as AGC Flat Glass North America, formerly known as American Flat Glass Distributors, Inc., Appellee.

No. 2010–SC–000572–DG.

Supreme Court of Kentucky.

Dec. 20, 2012.

Rehearing Denied April 25, 2013.

Philip Clyde Kimball, Louisville, KY, for appellant.

Gregory Watson, Louisville, KY, for appellee.

1. Kentucky Revised Statutes (KRS) 413.090(1).

Opinion of the Court by Chief Justice MINTON.

Poma Glass & Specialty Windows, Inc., is trying to collect on a civil judgment obtained in 1991 against Wade. The statute of limitations for an action upon a judgment or decree of a court is fifteen years, "to be computed from the date of the last execution thereon."[1] The question raised in this case is how to define *execution* for purposes of this fifteen-year statute of limitations. Does *execution* mean the issuance of the formal process for the collection of a judgment, known as a writ of execution; or does the word have the more general meaning of the act of enforcing, carrying out, or putting into effect a judgment?

We are persuaded that the term *execution* in the statute of limitations for actions on judgments is defined as an act of enforcing, carrying out, or putting into effect the judgment, including garnishments and judgment liens. The fifteen-year statute of limitations for an action upon a judgment is computed from the date of the last act enforcing, carrying out, or putting the judgment into effect, including garnishment proceedings and judgment liens. We affirm the Court of Appeals because the statute of limitations does not bar Poma from attempts to collect on the 1991 judgment against Wade.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

In March 1991, Poma's predecessor corporation[2] obtained a default judgment against Wade for over $13,000. To collect on the judgment, Poma caused a writ of execution to issue against Wade in April 1991. This was the only writ of execution

2. For ease of reference, we will refer to both Poma and Poma's predecessor company as "Poma."

,issued on the judgment. But Poma sought to collect on the judgment through other enforcement actions. Poma filed judgment liens on Wade's real estate in 1992 and 2000; initiated garnishment proceedings, most recently in March 2005; and undertook post-judgment discovery examinations.

Wade wants the judgment liens removed from his real estate. So, in 2008, he filed a declaration of rights action in the trial court, requesting the trial court to declare that the word *execution* in Kentucky Revised Statutes (KRS) 413.090(1) means the writ of execution form, not garnishments or other enforcement activities; and that Poma could no longer recover on the judgment against him because the limitations period established by that statute had expired. The trial court ruled that any enforcement activity by a judgment creditor like Poma, including judgment liens and garnishments, keeps a judgment alive for purposes of the fifteen-year statute of limitations. Because Poma caused a garnishment to issue against Wade in March 2005, the statute of limitations did not bar Poma's attempts to collect on the judgment.

The Court of Appeals upheld the circuit court's ruling with regard to garnishments, finding that the definition of *execution* includes a garnishment. But the Court of Appeals did not reach the question of whether judgment liens are also *executions* for purposes of the statute of limitations. We granted discretionary review of

the case, and we now affirm the decision of the Court of Appeals.

## II. ANALYSIS.

The statutory construction of KRS 413.091(1) is a matter of law, which we review de novo.[3] "[T]he cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect."[4] "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning."[5] And "[w]e read the statute as a whole and in context with other parts of the law."[6] "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts."[7] A statute is ambiguous "[w]hen the undefined words or terms in a statute give rise to two mutually exclusive, yet reasonable constructions. . . ."[8]

### A. KRS 413.091(1) is Ambiguous.

Under KRS 413.091(1), an action upon a judgment of any court must commence within fifteen years "from the date of the last execution thereon." Wade argues that the legislature used the term *execution* in a technical, legal sense—as the issuance of the formal process for the collection of a judgment, called a writ of execution. If Wade is correct, Poma can no longer seek to enforce the 1991 judgment against Wade because the limitation period creat-

3. *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007) (citation omitted).

4. *MPM Fin. Group, Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky.2009) (citation omitted).

5. *Richardson v. Louisville/Jefferson County Metro Gov't*, 260 S.W.3d 777, 779 (Ky.2008) (citation omitted).

6. *Petitioner F v. Brown*, 306 S.W.3d 80, 85–86 (Ky.2010) (citation omitted).

7. *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky.2011) (citations omitted).

8. *MPM Fin. Group, Inc.*, 289 S.W.3d at 198 (citations omitted).

ed by the statute expired in April 2006, fifteen years after the last (and only) writ of execution was issued.

The word *execution* has four different definitions according to BLACK'S LAW DICTIONARY. *Execution* can mean (1) "[t]he act of carrying out or putting into effect (as a court order or a securities transaction)"; (2) "validation of a written instrument, such as a contract or will, by fulfilling the necessary legal requirements"; (3) "[j]udicial enforcement of a money judgment, usu[ally] by seizing and selling the judgment debtor's property"; or (4) "[a] court order directing a sheriff or other officer to enforce a judgment, usu[ally] by seizing and selling the judgment debtor's property." [9]

For purposes of interpreting KRS 413.091(1), *execution* can mean either the act of executing an order or the order itself (in this case, the writ of execution). Wade argues that it means the latter—a writ of execution, which is "the formal document issued by the court that authorizes a sheriff to levy upon the property of a judgment debtor," [10] as described in KRS 426.020. But the trial court and the Court of Appeals interpreted *execution* to mean the former—an act of carrying out or putting into effect a court order.

The General Assembly uses the term *execution* in both senses of the word. KRS 425.501(4), which delineates the procedures for obtaining garnishments, provides that a "judgment debtor may appear and claim the exemption of any property or debt that is exempt from execution, and

on proof of exemption the garnishment shall be discharged as to the exempt property or debt." This garnishment statute refers to *execution* as any enforcement remedy for collecting judgments. Contrast this use of *execution* with that of KRS 427.010, which provides that certain "personal property of an individual debtor resident in this state is exempt from execution, attachment, garnishment, distress[,] or fee-bill." In this statute, *execution* refers to a writ of execution, distinct from attachment and garnishment.

Because the term *execution* is subject to various interpretations, which in turn change the application of KRS 413.090(1), we must look beyond the text of the statute to the statutory scheme concerning actions on judgments and to relevant case law.

## B. The Enforcement of Judgments in the Old Civil Code of Practice.

Before the current statutory scheme for the enforcement of judgments found in the Kentucky Revised Statutes, the Civil Code of Practice provided for attachments, writs of execution, and equitable actions under Section 439.[11] " 'Attachment' is a legal process which seizes and holds the property of the defendant until the rights of the parties are determined in the principal suit." [12] At or after commencing an action, a plaintiff could seek a writ of attachment against the defendant's property as security for the satisfaction of the judgment the plaintiff might recover.[13] The plaintiff could also pursue an attachment on the

9. *EXECUTION,* BLACK'S LAW DICTIONARY (9th ed.2009).

10. 30 AM.JUR.2D *Executions, etc.* § 62 (2012).

11. Writs of possession were also available to judgment creditors. *See, e.g., Tribble v. Frame,* 5 Litt. 187, 15 Ky. 187 (1824). These writs enabled a plaintiff to seize property belonging to the plaintiff and wrongfully de-

tained by the defendant. Because writs of possession are not at issue and were not briefed by the parties, we do not discuss this type of writ in our opinion.

12. 6 AM.JUR.2D *Attachment and Garnishment* § 1 (2012).

13. Civil Code of Practice of Kentucky § 194 (John Feland & Joshua F. Bullitt eds., 1876).

defendant's property being held by third parties, known as garnishees.[14] After a court rendered a judgment in their favor, plaintiffs could seek attachments against the judgment debtor and garnishees only in connection with a suit filed under Section 439 of the Civil Code.

Section 439 of the Civil Code provided for a separate action in a court of equity to collect on a judgment obtained in a court of law. At that time in our history, the courts distinguished between courts of equity and courts of law. Section 439 provided that

> [a]fter an execution of [*fieri facias* ], directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may institute an equitable action for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and in such actions, persons indebted to the defendant, or holding money or property in which he has an interest, or holding evidences or securities for the same, may be also made defendants.[15]

Courts often referred to an action under Section 439 as a discovery action because it was through this equitable proceeding that a judgment creditor could discover the judgment debtor's assets.[16] In effect, Section 439 provided that after a writ of execution on a judgment was returned "no property found," the plaintiff could "institute an equitable action for discovery[;] ... and persons indebted to the defendant or holding money or property in which he has an interest or holding evidences or securities for the same may also be made defendants." [17] The judgment creditor was entitled to seek discovery from the judgment debtor and from third parties indebted to the defendant.[18] And, as a matter of right, the creditor could obtain an attachment on the debtor's property, whether held by the debtor or a third party.[19] An action under Section 439 of the Civil Code, and the levy of attachment under Section 441, also created a lien against a judgment debtor's property.[20]

After a judgment was rendered in the plaintiffs favor, the judgment creditor could also pursue a writ of execution.[21] A *writ of execution* is "the formal document

14. *Id.*

15. *Cassada v. First Nat'l Bank*, 268 Ky. 373, 105 S.W.2d 149, 150 (1937).

16. *See, e.g., Commonwealth, City of Pineville v. Partin*, 223 Ky. 405, 3 S.W.2d 779, 780 (1928) ("this suit, in the nature of a bill of discovery....."); *Ray v. Peter Fox Sons Co. of Kentucky*, 272 Ky. 497, 114 S.W.2d 750, 751–52 (1938); *Marcum v. Marcum*, 156 Ky. 669, 161 S.W. 516, 517 (1913) ("This is an action ... under the provisions of [S]ection 439 of the Civil Code of Practice for the discovery of [the appellant's] money or other property....").

17. *Ray*, 114 S.W.2d at 751.

18. *See Marcum*, 161 S.W. at 517 ("No evidence was heard on this bill of discovery other than that of the defendant....").

19. Civil Code § 441 (1876); *See also Commonwealth, City of Pineville*, 3 S.W.2d at 780 (citation omitted).

20. Civil Code § 442 (1876); *Hartford Fire Ins. Co. v. Green*, 282 Ky. 466, 138 S.W.2d 933, 936 (1940) ("Section 439, Civil Code of Practice, provides how a lien may be created as against debtor's property, upon a return of [*nulla bona* ]."); *Murphy v. Cochran's Tr.*, 3 Ky.L.Rptr. 727, 80 Ky. 239, 240 (1882) ("[N]o attachment levy is necessary to give a lien as against the defendant in the action. The lien is an incident to such a proceeding in equity, and independent of the Code.").

21. 1860 Stanton's Revised Statutes of Kentucky, vol. 1 (Stanton, Richard H., ed.).

issued by the court that authorizes a sheriff to levy upon the property of a judgment debtor."[22] If a writ of execution was returned not satisfied in whole or in part, a new writ of execution could issue.[23]

## C. The Enforcement of Judgments Under the Kentucky Revised Statutes.

The statutory scheme regarding the enforcement of judgments has significantly evolved. The Kentucky Revised Statutes supplanted the Civil Code, and the modern Civil Rules of Practice and Procedure abolished the distinction between a suit in equity and an action at law.[24] And judgment creditors today have more options to enforce a judgment than under the old Civil Code.[25] Prejudgment attachments on a defendant's property being held by the defendant or third-party garnishees are still available, as are writs of execution.[26] Judgment creditors can also file a petition similar to an action under Section 439 of the Civil Code.[27]

Section 439 of the Civil Code was replaced by KRS 426.381, which reads:

(1) After an execution of [*fieri facias*], directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may by an amended and supplemental petition filed in the action have the same redocketed and join with the execution defendant or defendants any person believed to be indebted to him or them, or to hold money or other property in which he or they have an interest, or to hold evidences or securities for the same. Upon the filing of such amended petition[,] the case shall be transferred to the equity docket and summons issued thereon. In such supplemental proceeding or in a separate suit in equity against such parties (at his option)[,] the plaintiff may have discovery and disclosure from the judgment creditor and his debtor or bailee[ ] and may have any property discovered, or a sufficiency thereof, subjected to the satisfaction of the judgment.

(2) In such action[,] the plaintiff may have an attachment against the property of the defendant in the execution, pursuant to the attachment procedures provided for in KRS Chapter 425.

Although the statute is much the same as Section 439 of the Civil Code, it no longer requires a judgment creditor to file a separate suit in equity. Rather, the judgment creditor may have the action redocketed post-judgment by filing an amended and supplemental petition.[28] But the substance of the statute remains the same. The judgment creditor can seek discovery and disclosure from the judgment debtor and third parties who owe debts to the judgment debtor. The judg-

22. 30 Am.Jur.2d *Executions, etc.* § 62 (2012).

23. 1860 Stanton's, vol. 1.

24. *Caudill v. Little,* 293 S.W.2d 881, 882 (Ky. 1956).

25. We again note that judgment creditors can also seek a writ of possession under KRS 425.011. Because this enforcement procedure is not at issue and was not briefed by the parties, we do not discuss this writ in our opinion.

26. KRS 425.301 and KRS 426.010.

27. KRS 426.381.

28. The vestiges of the former separation of law and equity remain in that upon the filing of the amended petition, the statute calls for transfer of the case to the equity docket and allows the plaintiff the option of pursuing enforcement of the judgment in a supplemental proceeding or in a separate suit in equity. The Court of Appeals aptly noted that it is perhaps time for the General Assembly to revisit this statute in light of modern practice.

ment creditor can join third parties believed to be indebted to the judgment debtor. And just like Section 441 of the Civil Code, KRS 426.381(2) allows the judgment creditor to have an attachment against the debtor's property.

So, just as in the Civil Code, judgment creditors can enforce a judgment by pursuing a writ of attachment and a writ of execution and by filing a petition under KRS 426.381. But they are no longer restricted to these enforcement techniques. Judgment creditors today can also pursue garnishment orders and judgment liens.

■■ Judgment liens arise by virtue of a final judgment in the plaintiff's favor. A final judgment for the recovery of money or costs acts as a lien upon all real estate in which the judgment debtor has any ownership interest when the judgment creditor follows the procedures under KRS 426.720. The judgment creditor must file with the county clerk a notice of judgment lien.[29] The county clerk then enters the notice in the lis pendens records in that office.[30] And the judgment creditor must send the judgment debtor notice of the judgment lien.[31]

Garnishment proceedings also arise post-judgment.[32] An affidavit showing that a third party holds property belonging to the judgment debtor or is indebted to the judgment debtor must be filed in the same action in which the plaintiff obtained the judgment.[33] The judgment creditor then obtains an order of garnish-ment to serve on the garnishee, and the garnishee must answer in the action in accordance with the Rules of Civil Procedure.[34] If a garnishee fails to make a disclosure satisfactory to the judgment creditor, the creditor may bring an action against the garnishee by petition or amended petition in the same manner.[35]

With the statutory scheme for actions on judgments properly framed, we turn to relevant case law for guidance on how to interpret the fifteen-year statute of limitations.

## D. Garnishments and Judgment Liens are Executions Under the Fifteen-Year Statute of Limitations.

The relevant text of KRS 413.090(1) dates back to 1852.[36] At that time, the Civil Code of Practice of Kentucky was in effect, rather than the Kentucky Revised Statutes. The Civil Code used the term *execution*, and various forms of the word, in both the narrow and broad sense. The 1876 Civil Code repeatedly referred to executing various types of writs, other than writs of execution. For example, Section 203 of the Civil Code delineated the situations in which an "order of attachment shall be executed." [37] On the other hand, Section 212 of the Civil Code used *execution* to mean a writ of execution: "An attachment binds the defendant's property . . . in the same manner as an execution would bind it."

So even as early as 1876 the meaning of the term *execution* in the statute of limita-

---

29. KRS 426.720(1).

30. KRS 426.720(2).

31. KRS 426.720(3).

32. KRS 425.501(1) ("Any person in whose favor a final judgment in personam has been entered in any court of record of this state may . . . obtain an order of garnishment. . . .").

33. *Id.*

34. KRS 425.501(3) and (8).

35. KRS 425.526.

36. *Davidson v. Simmons*, 11 Bush 330, 74 Ky. 330, 332 (1875).

37. *See also* Civil Code §§ 201, 204, 207, and 208 (1876).

tions for actions on judgments was ambiguous. And its meaning has been litigated in Kentucky courts. This Court's predecessor held that writs of execution and actions under Section 439 of the Civil Code toll the fifteen-year statute of limitations on the enforcement of judgments.

The Court addressed the application of the fifteen-year statute of limitations in *H.A. Thierman Co. v. Wolff.*[38] In that case, Thierman obtained a judgment against Wolff in November 1884.[39] A writ of execution issued on the judgment in January 1885 and was returned, "no property found." In May 1892, Thierman filed an action under Section 439 of the Civil Code and a writ of attachment issued against Wolff. Thierman took no additional steps to enforce the judgment; and, in 1905, Wolff filed a motion to discharge the attachments taken out in 1892. Wolff argued that Thierman was barred from enforcing the 1884 judgment because more than fifteen years had passed since the only and last execution issued in November 1884. The Court rejected Wolffs argument because "[t]he statute of limitations relied upon contemplated the saving of the right of the judgment creditor for [fifteen] years within which to enforce the collection of his judgment, either by the institution of an action thereon or by having additional executions issued

thereon."[40] So Thierman was entitled to enforce the 1884 judgment because the company commenced an action under Section 439 of the Civil Code within fifteen years of the execution on the judgment.

In *Slaughter v. Mattingly,*[41] the Court likewise held that a judgment creditor may keep a judgment alive for purposes of the statute of limitations by commencing an action on the judgment under section 439 of the Civil Code.[42] The Court found that

after an execution on a judgment has been returned, "No property found," the judgment creditor has two ways to keep the judgment alive: He may keep it alive indefinitely by causing executions to issue on it from time to time within the period prescribed by the statute, or he may keep it alive indefinitely by commencing an action on the judgment under section 439 of the Civil Code within the time and in the manner prescribed by said section, and keeping the action on the docket.[43]

The *Thierman* and *Slaughter* Courts recognized that judgment creditors at the time could seek to enforce the judgment by causing the issuance of a writ of execution and by filing an action in equity under Section 439 of the Civil Code to discover the debtor's assets and place attachments on any property owned by the debtor or owed to the debtor by third parties.[44]

38. 125 Ky. 832, 102 S.W. 843 (1907).

39. Although not relevant to the analysis, we note that Thierman also obtained another judgment against Wolff in November 1884. An execution was also issued on this judgment and was returned "no property found." The later action that Thierman filed under Section 439 was based on both judgments.

40. *Id.* at 844.

41. 155 Ky. 407, 159 S.W. 980 (1913).

42. *Id.* at 982.

43. *Id.*

44. The Court of Appeals reasoned that simply by initiating a garnishment, Poma complied with KRS 426.381; so the statute of limitations was tolled because *Slaughter* holds that actions under Section 439 of the Civil Code toll the statute of limitations, and KRS 426.381 is the successor statute to Section 439. We disagree with this assessment of the statutory scheme. The successor statute to Section 439 specifically provides that the judgment creditor may have an attachment against the debtor's property under the procedures provided for in KRS Chapter 425. Garnishment procedures are located in KRS Chapter 425, and they are considered a form of attachment that occurs post-judgment. So

Both of these actions would "keep the judgment alive" and toll the fifteen-year statute of limitations on the enforcement of the judgment.[45] The Court did not define *execution* as writs of execution.

■ Wade contends that at the time the Court rendered *Slaughter*, judgment creditors could pursue a garnishment separately from an equitable action under Section 439. Although not referred to in the Civil Code as garnishments, Wade claims that the procedures for attachments also covered what we refer to today as garnishments. So he argues that the *Slaughter* Court held only that writs of execution and actions under Section 439 toll the statute of limitations, not separate garnishment proceedings. We disagree.

The attachment procedures delineated in Sections 194–270 of the Civil Code are prejudgment procedures. Section 194 provided that a plaintiff may have an attachment against the defendant's property "at or after the commencement of an action." An order of attachment was to be made by "the clerk of the court in which the action is brought or pending. . . ."[46] And to seek an attachment, the plaintiff was required to file an affidavit showing the sum that the plaintiff ought to recover.[47] The Civil Code did provide for pre-judgment attachments against third parties, known as garnishees. And it is true that many of the procedures involving attachments against third parties now appear in the garnishment procedures in the KRS. But in the Civil Code, attachments against third parties occurred prejudgment.[48]

As discussed above, garnishments today are post-judgment proceedings to enforce a judgment.[49] When *Slaughter* was decided, the only post-judgment attachments against third parties available to judgment creditors were those provided in actions brought under Section 439 of the Civil Code. So garnishment proceedings as we know them today did not exist at the time the Court rendered *Slaughter*. And the holding in *Slaughter* did not exclude garnishments from tolling the statute of limitations.

*Slaughter* and *Thierman* are instructive on the definition of *execution*. The purpose of the statute of limitations was to save "the right of the judgment creditor for [fifteen] years within which to enforce the collection of his judgment."[50] In *Thierman* and *Slaughter*, the Court did not limit the definition of *execution* in the statute of limitations to a writ of execution. On the contrary, the Court recognized that by enforcing a judgment after it was rendered through either a writ of execution or

KRS 426.381(2) anticipates that a judgment creditor may have a garnishment. But garnishment proceedings are not actions under KRS 426.381. Rather, they are an enforcement technique in addition to a KRS 426.381 petition. Judgment creditors can seek discovery under KRS 426.381 and pursue a garnishment to go along with it under subsection (2) of the statute; or judgment creditors can simply pursue garnishment proceedings apart from a petition under KRS 426.381.

45. Wade argues that *White v. Moore*, 100 Ky. 358, 38 S.W. 505, 506 (1897) stands for the proposition that equitable proceedings do not toll the fifteen-year statute of limitations on actions to enforce judgments. To the extent that this earlier case conflicts with *Thierman* and *Slaughter*, it is overruled.

46. Civil Code § 196 (1876).

47. Civil Code § 196(3) (1876).

48. *See Ray*, 114 S.W.2d at 752 ("The remedy of a creditor before judgment as against a garnishee is prescribed by [S]ections 224 to 227, inclusive, of the Civil Code of Practice. . . .").

49. KRS 425.501(1) ("Any person in whose favor a final judgment in personam has been entered. . . .").

50. *Thierman*, 102 S.W. at 844.

an action under Section 439 of the Civil Code, the judgment creditor tolls the statute of limitations.[51] This supports the conclusion that *execution* should be defined broadly in KRS 413.090(1). We hold that in the fifteen-year statute of limitations for actions on judgments, the term *execution* is defined as an act of enforcing, carrying out, or putting into effect a judgment.[52]

Today, judgment creditors can enforce judgments through KRS 426.381 petitions, garnishment orders, and judgment liens. These, too, are executions of a judgment in the broad sense of the word; they are acts of enforcing, carrying out, or putting into effect the court's judgment. And we hold that petitions under KRS 426.381, garnishment proceedings, and the filing of judgment liens all toll the fifteen-year statute of limitations.

## III. CONCLUSION.

The statute of limitations for an action upon a judgment or decree of a court is fifteen years, "to be computed from the date of the last execution thereon." [53] We hold that *execution* means an act of enforcing, carrying out, or putting into effect the court's judgment. And petitions under KRS 426.381, garnishment proceedings, and the filing of judgment liens toll the fifteen-year statute of limitations. Poma sought a writ of execution against Wade in 1991, filed judgment liens against Wade in 1992 and 2000, and pursued a garnishment order as recently as March 2005.[54] So Poma can still seek to recover on its 1991 judgment against Wade because it has repeatedly taken actions to execute the judgment. We affirm the decision of the Court of Appeals.

ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. ABRAMSON, CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCOTT, J., dissents by separate opinion. SCHRODER, J., not sitting.

SCOTT, J., Dissenting.

I must respectfully dissent from the majority's conclusion that the term "execution" as referenced in the statute of limitations for actions on a judgment encompasses any "act enforcing, carrying out, or putting into effect the judgment; includ-

---

**51.** We note that in *White*, 38 S.W. at 505–06, the Court held that partial payment in satisfaction of a judgment and execution also restarts the limitations period.

**52.** Other authority also recognizes that *execution* refers to an act of enforcing a judgment. *See, e.g.,* 33 C.J.S. *Executions* § 1 (2012) (citations omitted) ("As used in statutes[,] the term 'execution' often is construed in a broad sense as including more than the writ as already defined, although it is sometimes used as merely equivalent to a [*fieri facias*]. Thus, it sometimes embraces all the appropriate means of execution of the judgment; all means by which the judgments or decrees of courts are enforced; all processes issued to carry into effect the final judgment of a court; and all processes and proceedings in aid of, or supplemental to, execution that are customary in civil cases."); 6 Am.Jur.2d *Attachment and Garnishment* § 270 (2012) ("The writ of attachment ... is substantially a writ of execution, except that instead of emanating at the termination of a suit[,] it ordinarily issues at or near the beginning of a suit."); *Buckley v. F.L. Riley Mercantile Co.,* 155 Miss. 150, 124 So. 267, 267 (1929) (holding that in the statute of limitations, the word *execution* is used in the broad sense, including more than the writ of execution); *Div. of Employment Sec. v. Westerhold,* 950 S.W.2d 618, 621 (Mo.App.1997) (citation omitted) ("Garnishment is a form of execution."); *Russell v. Fred G. Pohl Co.,* 7 N.J. 32, 80 A.2d 191, 194 (1951) ("Attachment and garnishment are forms of execution....").

**53.** KRS 413.090(1) (emphasis added).

**54.** We do not reach Poma's argument that post-judgment discovery examinations upon Bills of Discovery under the Jefferson Circuit Court Rules qualify as a petition under KRS 426.381.

ing, garnishments and judgment liens." Thus I would reverse the Court of Appeals given that the fifteen year statute of limitations bars Poma from attempts to collect on the 1991 judgment against Appellant.

In pertinent part, KRS 413.090 reads,

[T]he following actions shall be commenced within fifteen (15) years after the cause of action first accrued:

(1) An action upon a judgment or decree of any court of this state or of the United States, or of any state or territory thereof, the period to be computed *from the last execution thereon* . . . .

(Emphasis added.) The key issue this case hinges on is the intended meaning of the word "execution." The resolution of this issue requires this Court to evaluate the statutory construction of KRS 413.090(1), and as the majority has properly stated, "[t]he cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *MPM Fin. Group Inc.*, 289 S.W.3d at 197. "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction or . . . interpretations by other courts." *Shawnee*, 354 S.W.3d at 551.

This is where I disagree with the majority, as they conclude the term "execution" is ambiguous in its meaning. I am, however er of the opinion that the use of the word "execution" in the statutory language could not have been more clear, in that it is referring to the traditional "writ of execution" that existed as of the statute's much earlier enactment.

I believe as I do because when this statute was initially enacted, the only remedy available was the traditional "writ of execution" and/or suits against third party holders of the debtor's property. Garnishments as we know them today—many years after the statute was enacted—were not an available remedy for this type of action. Furthermore, judgment liens only serve to put persons on notice that a title is not free and clear of encumbrances; they do not serve any enforcement purposes without further action and thus cannot toll the statute of limitations. The legislature used the word "execution" in the statute at a much earlier time when it could have only meant executions as then existed and they have not changed it since; thus the word should be held to mean nothing more and nothing less than what it has meant historically. If the legislature had intended to expand the term, as the majority's opinion now does, to mean something more, they have had sufficient opportunity to change the language or expand the meaning as the statute has been amended many times since, the most recent being July 15, 2008.

Therefore, given that the only writ of execution filed by Poma was in April 1991, the statute of limitations for the action would have expired in April 2006. Thus, I would reverse the Court of Appeals and find that Poma is statutorily barred from recovery on its 1991 judgment against Appellant.