NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0575n.06

No. 18-5997

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JACK T. IRWIN,

    Plaintiff-Appellant,

v.

DOUGLAS FOREE O'BRYAN, JR.,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 18, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

Before: COLE, Chief Judge; MERRITT and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Jack Irwin brought this action to enforce a judgment against Douglas O'Bryan, Jr. more than twenty-one years after the judgment was entered. The district court concluded that Kentucky's fifteen-year statute of limitations for actions enforcing judgments was not tolled by the issuance of two subpoenas *duces tecum* fourteen years ago; it therefore granted summary judgment to O'Bryan. We agree with the district court and AFFIRM its grant of summary judgment.

I.

Irwin and O'Bryan had been friends from childhood. In 1989 and 1990, Irwin made two loans to O'Bryan to enable him to pay overdue debts on five pieces of heavy farm equipment. When O'Bryan again fell behind on his payments, Irwin agreed to buy the equipment from O'Bryan in exchange for paying off the remaining debts on the equipment. Irwin also hired O'Bryan in his new contracting business. By 1991, however, the two were no longer getting along.

O'Bryan quit working for Irwin and took the farm equipment with him, claiming that he had only leased it to Irwin.

Irwin filed suit for conversion in Jefferson Circuit Court in Louisville, Kentucky and sought a temporary injunction restraining O'Bryan from selling the equipment while the suit was pending. After the circuit court denied Irwin's motion, O'Bryan sold the equipment to pay his attorney's fees and other debts. A jury then awarded Irwin a judgment of $650,367.21 for conversion in November 1992. Irwin immediately sought to execute the judgment by obtaining writs of execution, orders of garnishment, and a recorded judgment lien against O'Bryan. Acting pursuant to a writ of execution, the sheriff seized some cattle from O'Bryan but found no other property to satisfy the judgment. O'Bryan appealed the judgment. The Kentucky Court of Appeals partially reversed and remanded the case to the circuit court. In December 1995, the circuit court entered an amended judgment in Irwin's favor for $521,950.00.

O'Bryan, meanwhile, had moved to Georgia. Shortly after his move, he filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Kentucky. Irwin filed a complaint in the bankruptcy proceeding, seeking a determination that his judgment against O'Bryan was non-dischargeable. The bankruptcy court agreed, *see Irwin v. O'Bryan* (*In re O'Bryan*), 190 B.R. 290 (Bankr. E.D. Ky. 1995), and the district court affirmed the bankruptcy court's ruling in June 1998.

For almost seven years, Irwin took no further action regarding the judgment. But in April 2005, at the request of Irwin's attorney, the Jefferson Circuit Court issued two subpoenas *duces tecum* to the Georgia Department of Revenue and the Georgia Department of Motor Vehicles. The subpoenas sought production of "[a]ny and all documents pertaining to" O'Bryan and "any

business interest owned or held by" him.  The Georgia agencies complied and produced records related to O'Bryan's car and real property.

Twelve years passed with no further action from Irwin.  Then, on April 18, 2017, he brought this suit in Jefferson Circuit Court to enforce the 1995 amended judgment.  O'Bryan timely removed the case to the United States District Court for the Western District of Kentucky, invoking that court's diversity jurisdiction.  *See* 28 U.S.C. § 1332.  He then moved for summary judgment, arguing that Ky. Rev. Stat. (KRS) § 413.090(1), Kentucky's fifteen-year statute of limitations for actions enforcing judgments, bars Irwin's suit.  Irwin moved for summary judgment as well, arguing that the 2005 subpoenas were an "execution" on the judgment under KRS § 413.090(1) that tolled the statute of limitations.

The district court ruled that Irwin's subpoenas did not toll the statute of limitations.  It held that a subpoena *duces tecum* is not an "execution" under KRS § 413.090(1) because it "does not give a plaintiff any claim to the defendant's assets or property." *Irwin v. O'Bryan*, No. 3:17-CV-00321-CRS, 2018 WL 3973535, at *4 (W.D. Ky. Aug. 20, 2018).  Concluding that the statute of limitations had run, the district court granted O'Bryan's motion for summary judgment. *Id.* at *5. Irwin filed a timely notice of appeal.

## II.

We review a grant of summary judgment de novo. *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019).  "Where, as here, our subject matter jurisdiction is based on diversity of citizenship, we apply the substantive law of the forum state," *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019), including state statutes of limitations, *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945), and tolling provisions, *Ringrose v. Engelburg Huller Co.*, 692 F.2d 403, 405

(6th Cir. 1982). Accordingly, Kentucky's statute of limitations for actions on judgments and its provisions for tolling apply here.

The Kentucky statute of limitations at issue here provides:

> [T]he following actions shall be commenced within fifteen (15) years after the cause of action first accrued:

> (1) An action upon a judgment or decree of any court of this state or of the United States, or of any state or territory thereof, the period to be computed from the date of the last execution thereon . . . .

KRS § 413.090(1). Whether Irwin's 2017 suit is timely depends upon whether the subpoenas *duces tecum* issued in 2005 count as an "execution" on the 1995 amended judgment within the meaning of KRS § 413.090(1).

## A.

In *Wade v. Poma Glass & Specialty Windows, Inc.*, 394 S.W.3d 886 (Ky. 2012), the Kentucky Supreme Court discussed in general terms the meaning of "execution" as used in KRS § 413.091(1). The court found the term ambiguous, capable of referring either to a formal "writ of execution" or to any "act of carrying out or putting into effect a court order." *Id.* at 889. To resolve this ambiguity, the court considered the broader "statutory scheme concerning actions on judgments," including the history of such actions. *Id.*

As part of this analysis, the court compared methods for enforcing judgments under Kentucky's former Civil Code of Practice to those currently available under the Kentucky Revised Statutes. Under the Civil Code, a judgment creditor could seek a writ of execution; and if the judgment was not wholly satisfied, he could seek another. *Id.* at 890–91. Alternatively, a judgment creditor could initiate a separate action under Section 439 of the Civil Code in a court of equity, often called a "discovery action." *Id.* at 890. This action entitled the creditor "to seek discovery from the judgment debtor and from third parties indebted to the defendant. And, as a matter of

right, the creditor could obtain an attachment on the debtor's property, whether held by the debtor or a third party." *Id.* (footnote omitted). The action "also created a lien against a judgment debtor's property." *Id.*

Today, the Kentucky Supreme Court noted, "judgment creditors . . . have more options to enforce a judgment than under the old Civil Code." *Id.* at 891. The writ of execution remains available. *Id.* Judgment creditors can also file a petition under KRS § 426.381(2) that is similar to a discovery action under Section 439 of the Civil Code. *Id.* The form of the action is different: rather than initiate a separate action in equity, a judgment creditor may have the original action "redocketed post-judgment by filing an amended and supplemental petition." *Id.* The court stressed, however, that:

> the substance of the statute remains the same. The judgment creditor can seek discovery and disclosure from the judgment debtor and third parties who owe debts to the judgment debtor. The judgment creditor can join third parties believed to be indebted to the judgment debtor. And just like Section 441 of the Civil Code, KRS 426.381(2) allows the judgment creditor to have an attachment against the debtor's property.

*Id.* at 891–92. The Kentucky Revised Statutes also provide methods of enforcement unknown to the Civil Code, namely judgment liens and garnishment orders. *Id.* at 892. A final judgment acts as a lien on all the judgment debtor's real property provided that the creditor files with the county clerk's office, and a judgment creditor may obtain an order of garnishment post-judgment if he files an affidavit in the original action awarding the judgment showing that a third party holds property of the judgment debtor. *Id.*

After establishing this background, the court turned to its prior caselaw. The language of KRS § 413.090(1) dates back to 1852. *Id.* In interpreting the predecessor to KRS § 413.090(1) under the Civil Code, the Kentucky Court of Appeals, then the highest court of Kentucky, "did not

limit the definition of *execution* in the statute of limitations to a writ of execution." *Id.* at 894. Instead, it had held that both writs of execution and discovery actions under Section 439—the two methods for enforcing a judgment available at the time—sufficed to toll the statute of limitation for actions on judgments. *Id.* at 893–94 (citing *H.A. Thierman Co. v. Wolff*, 102 S.W. 843 (Ky. 1907), and *Slaughter v. Mattingly*, 159 S.W. 980 (Ky. 1913)).

Accordingly, the court in *Wade* concluded: "[E]xecution should be defined broadly in KRS 413.090(1). We hold that in the fifteen-year statute of limitations for actions on judgments, the term *execution* is defined as an act of enforcing, carrying out, or putting into effect a judgment." *Id.* at 895. The court further held that since petitions under KRS § 426.381, garnishment proceedings, and the filing of judgment liens are all methods of enforcing a judgment under Kentucky law, they are all executions that toll the statute of limitations for actions on judgments. *Id.*

Four years later, the Kentucky Court of Appeals addressed the scope of KRS § 413.091(1) in an unpublished opinion. *See Berling Constr. Co./Berling Dev. Enters. v. Schlagel*, No. 2014-CA-000607-MR, 2016 WL 3176801 (Ky. Ct. App. May 27, 2016). The plaintiffs in that case filed a motion to enforce a judgment more than seventeen years after it had been entered, and two years after the statute of limitations ordinarily would have run. *Id.* at *1. Eight years prior to their enforcement motion, however, the plaintiffs had "filed a motion in Boone Circuit Court alleging Berling had previously filed a supersedeas bond in the case and asked the court to compel production of the bond." *Id.* The court held that the prior motion to compel production of the *supersedeas* bond constituted an execution of the judgment under KRS § 413.091(1). The court reasoned:

> Although not captioned as "an amended and supplemental petition,"
> we conclude the Schlagels' motion encompassed the intent of a

> petition pursuant to KRS 426.381: as judgment creditors, their motion redocketed the action in a post-judgment proceeding and sought to compel Berling to disclose the existence of assets (the supersedeas bond) to satisfy the judgment.

*Id.* at \*3 (citing *Wade*, 394 S.W.3d at 891–92). Because the plaintiffs' motion was similar in substance, if not in form, to a petition pursuant to KRS § 426.381 (and therefore to a discovery action under the old Civil Code), the court concluded that it likewise had the effect of tolling the statute of limitations. *Id.*

## B.

Irwin maintains that a subpoena *duces tecum* issued in aid of execution of a judgment tolls the statute of limitations under KRS § 413.090(1). He claims that any action taken by a judgment creditor through judicial means that (1) is a "logical step in the enforcement of a judgment" and (2) is made with the "intent to satisfy the judgment" would fall under the "very broad[]" definition of *execution* adopted by *Wade*. Appellant Br. at 12. We disagree.

The Kentucky Supreme Court has said that "*execution* should be defined broadly in KRS 413.090(1)." *Wade*, 394 S.W.3d at 895. But the question before the court was whether the statute meant to refer only to a formal "writ of execution" or instead to any "act of enforcing, carrying out or putting into effect a court order." *Id.* at 887. Of these two options, the court chose the broader definition. *See id.* at 892 (speaking of the "narrow" sense and "broad sense" of *execution*). There is no indication in *Wade* that the court meant to give the term limitless reach; indeed, it is the nature of definitions, even broad ones, to place limits on the meaning of a term. Accordingly, an act by a judgment creditor that does not itself "enforce, carry out, or put into effect" a judgment is not an execution under KRS § 413.090(1), even if that act might place the creditor in a better position to enforce the judgment in the future.

All the methods of executing a judgment recognized by *Wade* confer a property interest on the judgment creditor that satisfies the judgment. The conferral of the property interest "puts into effect" the judgment, because it gives to the judgment creditor what he is owed by virtue of the judgment. A writ of execution commands a sheriff to seize and sell the judgment debtor's property and bring the proceeds before the court to give to the judgment creditor. KRS § 426.020. A petition under KRS § 426.381 permits a judgment creditor to "have any property discovered, or sufficiency thereof, subjected to the satisfaction of the judgment." *Id.* § 426.381(1). A judgment lien gives the creditor a lien on all the debtor's real property, and an order of garnishment gives the creditor the right to the debtor's property that is held by third parties. *Wade*, 394 S.W.3d at 892.

By contrast, a subpoena *duces tecum* is a discovery mechanism that "command[s] each person to whom it is directed . . . to produce designated documents or tangible things in that person's possession, custody, or control." Ky. R. Civ. P. 45.01(1). The party designated in a subpoena may "inspect and copy" the materials produced but does not otherwise obtain a property interest in them. *Id.* 45.04(2). A subpoena thus may inform a judgment creditor of the existence of assets he can pursue to satisfy the judgment, but it does not itself satisfy the judgment. In order to enforce, carry out, or put into effect the judgment, the judgment creditor would have to obtain an interest in the debtor's assets by some other means. A subpoena *duces tecum* therefore does not meet *Wade*'s definition of *execution* under KRS § 413.090(1).

Kentucky law from the Civil Code era, which is "instructive on the definition of *execution*," *Wade*, 394 S.W.3d at 894, supports this conclusion. Under the Civil Code, a judgment creditor could not "keep the judgment alive" beyond the fifteen-year statute of limitations by seeking the issuance of a subpoena or making use of some other discovery mechanism that did not itself confer

a property interest. *Slaughter*, 159 S.W. at 982. Instead, a creditor could only toll the statute of limitations through actions that could confer a property right in satisfaction of the judgment, namely seeking a writ of execution or bringing an action under Section 439. *Id.*

Nor did Irwin's subpoenas *duces tecum* "encompass[] the intent of a petition pursuant to KRS 426.381" as did the motion in *Berling* to compel production of the defendant's *supersedeas* bond. 2016 WL 3176801 at *3. Irwin's subpoenas, like both the motion in *Berling* and a § 426.381 petition, did "s[eek] to compel [Georgia authorities] to disclose the existence of assets . . . to satisfy the judgment." *Id.* But unlike the motion in *Berling* and a § 426.381 petition, they did not "redocket[] the action in a post-judgment proceeding." *Id.* This difference is one of substance, not merely of form.

As recounted above, under the Civil Code a discovery action was a separate action in equity that allowed a judgment creditor to attach and obtain liens on the debtor's property, thereby obtaining a property interest in it. *Wade*, 394 S.W.3d at 890. Redocketing an action by a § 426.381 petition has substantially the same effect. It initiates a "supplemental proceeding" under the court's equitable authority that allows the judgment creditor to "have any property discovered, or sufficiency thereof, subjected to the satisfaction of the judgment." KRS § 426.381(1). It also permits the judgment creditor to attach the debtor's property. *Id.* § 426.381(2). Since the plaintiffs in *Berling* also redocketed their initial action with their motion to compel production of the defendant's *supersedeas* bond, they too could have obtained a property interest in the defendant's assets by the court's equitable authority.

By contrast, Irwin's subpoenas *duces tecum* did not empower Irwin to obtain a property interest in O'Bryan's assets under the issuing court's equitable authority. It therefore differs in substance from a discovery action under the Civil Code, a petition made pursuant to KRS

§ 426.381, and the plaintiffs' motion in *Berling*, and it cannot be deemed an execution under KRS § 413.090(1) by way of analogy to them.

The other authorities on which Irwin relies to show that his subpoenas tolled the statute of limitations are inapposite. He contends that *Choate v. Bank of Cadiz & Tr. Co.*, establishes that an action need only be a "step in the enforcement of a judgment," No. 2013-CA-001849-MR, 2015 WL 4154069, at *2 (Ky. Ct. App. July 10, 2015), to toll the statute of limitations. *Choate*, however, dealt with the jurisdiction of a trial court to issue a deficiency judgment *within* the fifteen-year statute of limitations. *See id.* (noting that "eleven years had elapsed since the January 13, 2003 judgment"). It says nothing about what actions can toll the statute of limitations.

Irwin also claims that *In re Back*, No. 15-50131, 2015 WL 4624543 (Bankr. E.D. Ky. Aug. 3, 2015), stands for the same proposition as *Choate*. *Back* held that a motion to intervene in a bankruptcy proceeding to enforce a judgment was an execution under KRS § 413.090(1). *Id.* at *2. It did so not because a motion to intervene is a "logical step" in the enforcement of a judgment but because motions to intervene are generally considered to be the commencement of an action for statute-of-limitations purposes. *Id.* There was no question that the judgment creditors in *Back* could enforce their judgment once they had entered the proceedings. Thus, neither *Choate* nor *Back* speaks to the effect of a subpoena on the statute of limitations.

We hold that a subpoena *duces tecum* is not an "execution" that tolls the statute of limitations under KRS § 413.090(1). It does not enforce, carry out, or put into effect a judgment because it does not confer on the judgment creditor some property interest that satisfies the judgment. Since Irwin's 2005 subpoenas *duces tecum* were not executions under KRS § 413.090(1), his last execution on the judgement took place no later than June 1998, over eighteen

years before he brought this action in April 2017.[1]  Kentucky's fifteen-year statute of limitations

on actions enforcing a judgment therefore bars his present suit.

* * *

We AFFIRM the district court's grant of summary judgment to O'Bryan.

---

[1] Because it does not affect the outcome of this case, we take no position on what effect, if any, Irwin's participation in O'Bryan's bankruptcy proceedings had on the running of the statute of limitations.